IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 20, 2004

## STATE OF TENNESSEE v. JON BREWBAKER

**Direct Appeal from the Criminal Court for Bradley County**
**No. M-02-888      Carroll L. Ross, Judge**

_____

**No. E2003-02706-CCA-R3-CD**
**June 18, 2004**
_____

The Defendant, Jon Brewbaker, pled guilty to second degree murder, a Class A felony. After a hearing, the trial court sentenced the Defendant to twenty-three years in the Department of Correction. The sole issue on appeal is whether the sentence imposed by the trial court is excessive. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOE G. RILEY and THOMAS T. WOODALL, JJ., joined.

Richard Hughes, Public Defender, Cleveland, Tennessee, for the appellant, Jon Brewbaker.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Jerry N. Estes, District Attorney General; and Joseph V. Hoffer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At the guilty plea hearing, the assistant district attorney general gave the following recitation of the relevant facts, which were gleaned from statements the Defendant made to the police. Early on the morning of October 17, 2002, the Defendant met the victim, Jonathan Shanks, by way of the internet. They agreed to meet at the Charleston Boat Dock, which they did. They left the victim's car parked at the boat dock, and they then went to the Defendant's residence. There the Defendant performed oral sex on the victim. After the sexual encounter, the victim disclosed to the Defendant that he suffered from genital warts. The Defendant became "upset," and they began to argue. The argument became physical, with the victim biting the Defendant, the Defendant hitting the victim, and both of them wrestling with each other. Eventually the victim's head "hit the window," breaking it, and his head began to bleed. At this point the fight stopped. The Defendant agreed to take the victim back to his car at the boat dock. When they arrived, the victim took the Defendant's pager

and told him that he was going to report him to the police and accuse him of rape. In his statement to the police, the Defendant said that he was not "out" about [his] sexual orientation; therefore, this threat "truly scared [him]" and he "just snapped." As the victim walked away from the Defendant's car, the Defendant got his revolver and shot the victim in the back. The victim fell down, and the Defendant shot him twice more: once in the chest and once in the face. According to the Defendant's statement, he killed the victim to prevent his family and friends from discovering his homosexual lifestyle.

At the sentencing hearing, Dr. Ronald Toolsie testified that he performed the autopsy on the body of the victim. He found three gunshot wounds on the body, one in the head, one in the chest, and one in the back. The gunshot wound to the chest would have itself been fatal because it passed through the heart and lungs. Likewise, the gunshot wound to the back would alone have been fatal because it passed through the spinal cord and a lung, which caused significant bleeding.

The victim's mother, Susan Marie Shanks, testified that the victim was openly gay. At the time of his murder, he was a biology major at Chattanooga State Technical Community College and worked at Longhorn Restaurant. Ms. Shanks testified that the victim had genital warts at the time of his death. The victim's father, Charles Victor Shanks, also testified about the profound impact that the victim's death had on all the people that loved him.

The Defendant's older sister, Carrie Andreu, testified that she and the Defendant were physically and mentally abused by their stepfather. She also testified that their mother had been married four times and had moved several times while the Defendant was growing up. Finally, she stated that, approximately two years before the murder, their mother had run off with the Defendant's biological father, which was very difficult for the Defendant.

Lynne Eaks, the Defendant's aunt, testified that the Defendant had worked in law enforcement and had carried a gun in his car for "protection." She also testified that he had a history of being unable to control his temper. Finally, she explained that the Defendant's mother never nurtured him, and this left him feeling abandoned.

According to the presentence report, at the time of sentencing, the Defendant was thirty-three years old and single. Although he dropped out of high school, he received his G.E.D. in 1989. He also completed several hours of E.M.T. and law enforcement training at vocational schools. He described his mental and physical health as good, but he was taking several prescription drugs for "nerves," high blood pressure, and "stomach problems." The presentence report states that "[i]n the last decade, the Defendant has had at least 17 jobs. Most of these jobs ended after a few months. The longest period of employment was with University of Tennessee - Chattanooga's police department." He worked at that job for almost two years. Furthermore, the report states that "[t]here were discrepancies in dates, wage and reason for termination of employment that Mr. Brewbaker gave versus what the past employers gave." The Defendant has no prior criminal history.

At the conclusion of the sentencing hearing, the trial court imposed a sentence of twenty-three years based upon the existence of one enhancement factor. The Defendant asserts that the sentence is excessive.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Pike, 978 S.W.2d 904 app. at 926-27 (Tenn. 1998). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401 Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

"Second degree murder is a Class A felony." Tenn. Code Ann. § 39-13-210(b). The trial court determined the Defendant to be a Range I offender, see id. § 40-35-105(a), (b), and, as such, the Defendant was subject to a potential sentence of fifteen to twenty-five years. See id. § 40-35-112(a)(1). The presumptive sentence for a Class A felony is the midpoint of the range, see id. § 40-35-210(c), and may be enhanced or reduced based upon the existence of applicable enhancement and mitigating factors. See id. § 40-35-210(d), (e).

In this case, the trial court enhanced the Defendant's sentence from the presumptive sentence of twenty years to twenty-three years based upon the enhancement factor that the Defendant

employed a firearm during the commission of the offense. See id. § 40-35-114(10). The court found no mitigating factors.

The Defendant's challenge to his sentence is twofold. First, he asserts that the trial court erred by failing to find as a mitigating factor that he "acted under strong provocation." Id. § 40-35-113(2). He argues that the victim first provoked him when he disclosed that he suffered from genital warts, after the Defendant had performed fellatio on him. The Defendant contends that he was again provoked when the victim took his pager, accused him of rape, and told him that he was going to report him to the police.

> The trial court explained its decision to not apply mitigating factor (2) as follows: The State reduced this from first degree, and certainly, whatever benefit he gets for any provocation, I think it comes in by that reduction.[1] And I don't think the proof here shows anything that would be subject to finding a mitigation factor based on any provocation here. And I base that specifically on the fact that we had in effect two separate assaults here. Unfortunately, the second one resulted in evidently the death of the victim. It's clear he took the victim back from his residence in Athens back to the boat dock in Charleston, from what I see in the presentence report here. And I don't think anything that happened there would serve as any kind of provocation. It's clear at that point they were probably upset at each other, and they may have had reason to be upset with each other for what each other had said or done or whatever, but they had no reason to shoot one another, either one of them, for that matter. So I don't find that subparagraph (2) has been shown as an adequate provocation.

We conclude that the trial court did not err by declining to apply this factor. First, for the factor to apply, it must be shown that the defendant acted "under strong provocation." Id. (emphasis added). Nothing the victim did or said constituted strong provocation. Second, even if the Defendant had been acting under provocation initially, said provocation was in no way sufficient to justify him getting out of his vehicle and shooting the victim, who lay helpless and wounded on the ground, twice more. The trial court did not err by declining to award mitigation on this basis.

Second, he argues that the trial court placed too much weight on the enhancement factor that he used a firearm during the commission of the offense. He complains that the trial court should not have enhanced his sentence by three years. He suggests one year as a more appropriate alternative. We are unpersuaded. The Defendant concedes that the trial court did properly find that enhancement factor (10) was applicable, and we conclude that the trial court did not err or abuse its discretion by enhancing the Defendant's sentence by three years based upon the weight given to this factor. This issue is without merit.

---

[1] "[T]he trial court may look behind a plea agreement and consider the true nature of the offense committed." State v. Latoya Anderson, No. 02C01-9707-CR-00251, 1998 WL 599527, at *3 (Tenn. Crim. App., Jackson, Sept. 11, 1998) (citing State v. Hollingsworth, 647 S.W.2d 937, 939 (Tenn. 1983)); State v. Biggs, 769 S.W.2d 506, 507 (Tenn. Crim. App. 1988).

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE